IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-103

| | |
|---|---|
| JOSHUA TAVENEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERNATIONAL PAPER ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> ) <br> INTERNATIONAL PAPER ) <br> COMPANY, ) <br> ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THOMAS INDUSTRIAL ) <br> MECHANICAL CONSTRUCTORS, ) <br> LLC, ) <br> ) <br> Third-Party Defendant. ) | **ORDER** |

On July 17, 2019, Joshua Taveney ("Taveney" or "plaintiff") filed suit against International Paper Company ("International Paper") alleging claims arising from injuries Taveney sustained during a workplace incident [D.E. 1]. On January 9, 2020, International Paper filed a third-party complaint against Thomas Industrial Mechanical Constructors, Inc. ("Thomas Industrial") alleging claims for express indemnity, implied equitable indemnity, apportionment of fault, and a declaratory judgment [D.E. 11]. On February 10, 2020, Thomas Industrial answered the third-party complaint and asserted as a defense a motion to dismiss for failure to state a claim [D.E. 17]. Discovery concluded on April 30, 2021. See Order [D.E. 34]. On June 1, 2021, Thomas Industrial moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, in the

alternative, for summary judgment [D.E. 36]. On June 22, 2021, International Paper responded in opposition [D.E. 39]. On July 6, 2021, Thomas Industrial replied [D.E. 40].

On January 27, 2022, International Paper moved for leave to file an amended third-party complaint [D.E. 41]. On March 10, 2022, Thomas Industrial responded in opposition [D.E. 43]. As explained below, the court denies Industrial Paper's motion to amend, construes Thomas Industrial's motion to dismiss as a motion for judgment on the pleadings, and grants the motion.

I.

International Paper operates a mill in New Bern, North Carolina. See Compl. [D.E. 1] ¶ 3.[1] International Paper contracts with Thomas Industrial to provide maintenance services at the mill. See id. ¶ 10. Taveney worked for Thomas Industrial, which was assigned to complete work for International Paper at the mill. See id. ¶¶ 9, 11. On March 17, 2019, Taveney had to disconnect and remove a valve from a pipeline at the mill. See id. ¶¶ 12, 14. Before doing so, Taveney twice asked International Paper's pipe operator if the pipe was de-energized and asked whether he needed to obtain a line break permit. See id. ¶¶ 16, 27. Both times, the operator assured Taveney the pipe was de-energized and offline. See id. ¶¶ 19–20, 28. However, a valve upstream of where Taveney was working had sprung a leak. See id. ¶¶ 21–22. When Taveney removed the downstream valve, high pressure steam and boiling water exited the pipe, severely burning him. See id. ¶¶ 29–34.

On December 6, 2021, International Paper settled the underlying dispute with Taveney. See [D.E. 41] ¶ 16. In its third-party complaint, International Paper seeks indemnity, contribution, and a declaratory judgment. See Third-Party Compl. ¶¶ 4–23.

---

[1] International Paper's third-party complaint expressly references Taveney's original complaint. See Third Party Compl. [D.E. 11] ¶¶ 2–3.

2

II.

On January 27, 2022, International Paper moved to amend its third-party complaint to allege additional facts and to add an insurance company as a second third-party defendant. See [D.E. 41]. Thomas Industrial opposes the motion, arguing International Paper's motion violates this court's scheduling order and does not comply with Federal Rules of Civil Procedure 15 and 16. See [D.E. 43].

On November 5, 2019, the court issued a scheduling order. See [D.E. 10]. According to the order, the parties had to complete discovery by July 31, 2020, and file all potentially dispositive motions by August 28, 2020. See id. at 1. Additionally, the court ordered that "motions to join additional parties and to amend pleadings must be made promptly after the information giving rise to the motion becomes known to the party or counsel. Any such motion filed after January 17, 2020, must meet the standards of Fed. R. Civ. P. 15 and 16." Id. at 2. On June 12 and August 31, 2020, and on February 16, 2021, the court extended the deadlines for expert reports, discovery, and dispositive motions, but the court did not extend the deadline for motions to join additional parties or to amend the pleadings. See [D.E. 22, 26, 34].

On May 17, 2019, International Paper wrote to Thomas Industrial concerning this litigation, seeking indemnity and contribution. See [D.E. 41] ¶ 8. International Paper also asked Thomas Industrial to notify its insurance carriers. See id. On August 28, 2019, American Casualty Company of Reading, Pennsylvania ("ACCO"), one of Thomas Industrial's insurance carriers, informed International Paper of its position that International Paper was not an insured under the policy and that it did not consider Thomas Industrial to be responsible for Taveney's injuries. See id. ¶¶ 7, 9. On January 9, 2020, International Paper filed its third-party complaint, naming Thomas Industrial, but not ACCO, as a third-party defendant. See [D.E. 11].

3

On April 30, 2021, discovery closed. On May 18, 2021, the parties participated in a mediated settlement conference. International Paper asserts that Thomas Industrial and ACCO "refused to participate in good faith." [D.E. 41] ¶ 11. On June 1, 2021, after the settlement conference resulted in an impasse, Thomas Industrial moved to dismiss International Paper's third-party complaint. See [D.E. 36]. International Paper unsuccessfully attempted to communicate with ACCO on May 20 and June 11, 2021, concerning indemnity and contribution. See [D.E. 41] ¶¶ 12–13. On December 6, 2021, International Paper settled its dispute with Taveney. See id. ¶ 16. On December 29, 2021, International Paper informed Thomas Industrial of the settlement. See id. ¶ 17. Nearly a month later, International Paper moved for leave to amend its third-party complaint to allege additional factual allegations and to add ACCO as a third-party defendant. See id. at 1.

A party's complaint puts its opponent on notice of the claims in the case. If a party wishes to amend those claims, the party must comply with the Federal Rules of Civil Procedure. Under Rule 15, provided certain time requirements are met, a party may amend a pleading once as a matter of course. See Fed. R. Civ. P. 15(a)(1). Rule 15 allows additional amendments only with the permission of the opposing party or with leave of court, and such leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, once a court enters a scheduling order under Rule 16 with a deadline concerning amendments to pleadings, and the deadline expires, the process changes. At that point, to amend a pleading, a party must first establish "good cause" under Rule 16 and then establish the traditional requirements under Rule 15 (i.e., the absence of prejudice, futility, and bad faith). See, e.g., Attkisson v. Holder, 925 F.3d 606, 625–26 (4th Cir. 2019); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298–99 (4th Cir. 2008). If the party fails to establish "good cause" under Rule 16, a trial court may deny the motion to amend and need not analyze the motion under Rule 15. See Nourison Rug, 535 F.3d at 299; see also Gilbert v. Deutsche

4

Bank Tr. Co. Ams. for Res. Accredit Loans, Inc., No. 4:09-CV-181-D, 2016 WL 7378985, at *1–2 (E.D.N.C. May 25, 2016) (unpublished); Royce v. Wyeth, No. 2:04-0690, 2011 WL 1397043, at *1-2 (S.D.W. Va. Apr. 13, 2011) (unpublished); Rodgers v. Hill, No. 5:08-CT-3105-D, 2010 WL 3239104, at *13 (E.D.N.C. Aug. 16, 2010) (unpublished); Halpern v. Wake Forest Univ. Health Scis., 268 F.R.D. 264, 266 (M.D.N.C. 2010); Remediation Prods., Inc. v. Adventus Ams., Inc., No. 3:07CV00153-RJC-DCK, 2009 WL 101692, at *1–2 (W.D.N.C. Jan. 8, 2009) (unpublished).

Rule 16's "good cause" requirement focuses primarily on "the diligence of the moving party." Montgomery v. Anne Arundel Cnty., 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam) (unpublished). In considering diligence, the court looks to whether the "evidence supporting the proposed amendment would not have been discovered . . . until after the amendment deadline had passed." United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007) (quotation omitted). The court also "focuses on the timeliness of the amendment and the reasons for its tardy submission." Montgomery, 182 F. App'x at 162; see Opsitnick v. Crumpler, No. 5:13-CV-835-D, 2015 WL 12860285, at *1 (E.D.N.C. Oct. 19, 2015) (unpublished).

"Given their heavy case loads, district courts require the effective case management tools provided by Rule 16." Nourison Rug, 535 F.3d at 298. A trial court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985). Where Rule 16(b) applies in addition to Rule 15(a)(2), "the district court's discretion is substantial." Moore v. Equitrans, L.P., 818 F. App'x 212, 218 (4th Cir. 2020) (unpublished); cf. Cahoon v. Edward Orton, Jr. Ceramic Found., No. 2:17-CV-63-D, 2020 WL 918753, at *4–5 (E.D.N.C. Feb. 24, 2020) (unpublished).

International Paper has failed to demonstrate good cause under Rule 16. As for adding ACCO as a third-party defendant, according to International Paper's own filings, it knew that ACCO

5

insured Thomas Industrial, that ACCO did not consider International Paper an insured, and that ACCO did not believe Thomas Industrial owed International Paper indemnity or contribution at least as early as August 28, 2019, two months before the court issued its scheduling order and more than four months before International Paper filed its third-party complaint against Thomas Industrial. See [D.E. 41] ¶ 9. International Paper has provided no reason why it could not have included ACCO as a third-party defendant in its original third-party complaint, which it timely filed against Thomas Industrial in accordance with the court's scheduling order.

There are other moments in the history of this case when International Paper could have sought leave to amend its third-party complaint and add ACCO as a defendant. ACCO apparently attended the parties' May 18, 2021 settlement conference and allegedly "refused to participate in good faith." [D.E. 41] ¶ 11. International Paper could have moved for leave to amend immediately after the settlement conference but did not do so. Instead, International Paper waited eight months after the settlement conference to move for leave to amend. Moreover, on December 6, 2021, International Paper settled the underlying dispute with Taveney. See id. ¶ 16. However, International Paper waited nearly a month before informing Thomas Industrial and ACCO of the settlement, see id. ¶ 17, and nearly a month after that to move for leave to amend. See id. at 5. International Paper has not explained these delays.

As for the new factual allegations International Paper seeks to allege in its amended complaint, International Paper has long known these facts. International Paper relies on many of the facts in its memorandum opposing Thomas Industrial's motion to dismiss. Compare [D.E. 39] 2–4, with [D.E. 41-2] ¶ 14. International Paper filed that memorandum on June 22, 2021. See [D.E. 39]. Thus, even though International Paper was aware of facts potentially supporting its claims at least as early as June 2021, International Paper did not move to amend its third-party complaint until

· 6

seven months later in January 2022. International Paper has not explained this delay. Moreover, this delay is especially perplexing because International Paper could have amended its third-party complaint as a matter of course in the three weeks following Thomas Industrial's motion to dismiss on June 1, 2021. See Fed. R. Civ. P. 15(a)(1)(B). Instead, International Paper included the facts in its briefing without exercising its right under Rule 15 to amend as a matter of course.

A trial court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded." Gestetner Corp., 108 F.R.D. at 141. The record demonstrates that International Paper unreasonably delayed in moving to amend and has not shown good cause for its delay under Rule 16. Thus, the court need not consider whether International Paper's proposed amended complaint satisfies Rule 15. Accordingly, the court denies International Paper's motion to amend.

### III.

Thomas Industrial moves to dismiss under Rule 12(b)(6) and, in the alternative, for summary judgment [D.E. 36]. Although Thomas Industrial asserted its motion to dismiss in its answer to the third-party complaint [D.E. 17], it did not file a separate motion and brief the issue until after discovery closed. The court construes the motion as a motion for judgment on the pleadings under Federal Rules of Civil Procedure 12(c) and 12(h)(2)(B).

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant the motion if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see

7

Mayfield v. NASCAR, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). A court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007).

The same standard applies under Rule 12(c) and Rule 12(b)(6). See Mayfield, 674 F.3d at 375; Burbach Broad. Co., 278 F.3d at 405–06. Thus, a motion under Rule 12(c) tests the legal and factual sufficiency of the claim. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(c) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences in the "light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015); Burbach Broad. Co., 278 F.3d at 406. A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal,

8

556 U.S. at 678–79. Rather, a party's allegations must nudge[] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

This court has subject-matter jurisdiction based on diversity. See 28 U.S.C. § 1332.[2] Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

The parties' contract contains a choice-of-law provision. It states: "Unless otherwise agreed, this [contract] shall be interpreted under the laws of the state of Tennessee, without recourse to conflict of law provisions." [D.E. 37-1] 5. But the parties' contract concerns the maintenance of International Paper's mill in New Bern, North Carolina. Under North Carolina law, "[a] provision in any contract, subcontract, or purchase order for the improvement of real property in this State . . . is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws of another state." N.C. Gen. Stat. § 22B-2; see DFA Dairy Brands, LLC v. Primus Builders, Inc., No. 5:21-CV-00026-KDB-DSC, 2021 WL 4258797, at *3–4 (W.D.N.C. July 27, 2021) (unpublished), report and recommendation adopted, 2021 WL 3616711 (W.D.N.C. Aug. 16, 2021) (unpublished). To improve real property means "[t]o build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property." N.C. Gen. Stat. § 44A-7(3); see id. § 22C-1(2). An improvement can be "all or any part of any building structure, erection, alteration, demolition, excavation, clearing, grading, filling, or landscaping." Id. § 44A-7(4); see id. § 22C-1(3). Under these definitions, repairing the valves at International Paper's mill, as contemplated in the parties' contract, constitutes an improvement to real property.

---

[2] Thomas Industrial and Taveney are both citizens of Louisiana. See Third-Party Compl. ¶ 1; Compl. ¶ 1. However, because Thomas Industrial and Taveney are not adverse, complete diversity is not destroyed. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 & n.3 (1996).

9

Moreover, the parties' arguments overwhelmingly rely on North Carolina law, and the parties relegate their cursory discussion of Tennessee law to footnotes. See, e.g., [D.E. 37] 16 n.4; [D.E. 39] 10 n.3. Thus, the court applies North Carolina substantive law.

To apply North Carolina substantive law, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[3] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

---

[3] North Carolina has no mechanism for certifying questions of state law to the Supreme Court of North Carolina. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

A.

International Paper seeks indemnity based on the indemnification provision in its contract with Thomas Industrial. See Third-Party Compl. [D.E. 11] ¶¶ 4–11; see also Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 180 N.C. App. 257, 259, 636 S.E.2d 835, 837 (2006) ("A right to indemnity may rest on the express contractual provisions between two parties . . . ."), aff'd, 362 N.C. 269, 658 S.E.2d 918 (2008). The parties' indemnity provision states:

> Indemnity. [Thomas Industrial] agrees to indemnify, defend and hold harmless [International Paper], its agents, servants and employees from and against any and all expenses, claims, demands, losses, damages, actions, or liability of any kind, including attorney's fees incurred for any and all damage or injury of any kind or nature whatever (including death) to all persons, (including those employed by [Thomas Industrial]) or property which is caused by, arises out of, on account of, or as a result of the performance by [Thomas Industrial], or any sub-contractor of [Thomas Industrial] in connection with this Order. Upon demand, [Thomas Industrial] agrees to assume on behalf of [International Paper] the defense of any action, at law or in equity, which may be brought against [International Paper] upon any such claim and to pay on behalf of [International Paper] the amount of any judgment that may be entered against [International Paper] in any such action. [Thomas Industrial] hereby expressly waives any immunity from suit by [International Paper], which may be conferred by the workers' compensation laws, or any other law of any state that would preclude enforcement of the indemnification clause of this agreement by [International Paper]. [Thomas Industrial] further agrees to pay any reasonable attorney's fees incurred by [International Paper] in securing compliance with the provisions of this indemnification agreement. [Thomas Industrial] agrees that its obligations to indemnify under this section are distinct from, independent of, and not intended to be coextensive with its duty to procure insurance required herein.

[D.E. 37-1] 5. The parties' contract separately states that "[Thomas Industrial] further agrees to indemnify and hold harmless [International Paper] for any loss, damage, fine, penalty or any expense whatsoever as a result of the failure of [Thomas Industrial] or its subcontractors to comply with" OSHA safety standards and regulations. Id.

Thomas Industrial argues that the indemnity provision is void against public policy under North Carolina law. See [D.E. 37] 15–22. International Paper disputes that the indemnity provision

11

is void under North Carolina law. International Paper also responds that the waiver in the indemnity provision means Thomas Industrial expressly waived that argument. See [D.E. 39] 5–12. Thomas Industrial replies that the waiver is unenforceable. See [D.E. 40] 2–5.

Courts interpret indemnity provisions like other contractual provisions. The "primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and ordinary rules of construction apply." Dixie Container Corp. v. Dale, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968); see Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008). A court may interpret an ambiguous contract as a matter of law, but if ambiguity in the contract creates uncertainty regarding the intentions of the parties, the question is for the jury. See Schenkel & Shultz, 362 N.C. at 273, 658 S.E.2d at 921; Lane v. Scarborough, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973); Farmers Bank v. Michael T. Brown Distributors, Inc., 307 N.C. 342, 347–48, 298 S.E.2d 357, 360 (1983); WakeMed v. Surgical Care Affiliates, LLC, 243 N.C. App. 820, 824–25, 778 S.E.2d 308, 312 (2015). "[C]ourts strictly construe indemnity clauses against the party asserting it." City of Wilmington v. N.C. Nat. Gas Corp., 117 N.C. App. 244, 248, 450 S.E.2d 573, 575–76 (1994).

North Carolina law generally allows a party "to contractually provide for indemnification against its own negligence." CSX Transp., Inc. v. City of Fayetteville, 247 N.C. App. 517, 523, 785 S.E.2d 760, 763–64 (2016); see Gibbs v. Carolina Power & Light Co., 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965). However, a statutory exception applies for indemnification in construction agreements. A "construction agreement" is "[a]ny promise or agreement in, or in connection with, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building [or] structure . . . ." N.C. Gen. Stat. § 22B-1(f)(1). Under N.C. Gen. Stat. § 22B-1, "[p]rovisions in, or in connection with, a construction agreement . . . purporting to require

12

a promisor to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy, void and unenforceable." Id. § 22B-1(a); see One Beacon Ins. Co. v. United Mech. Corp., 207 N.C. App. 483, 487–88, 700 S.E.2d 121, 124 (2010). The statute does not prohibit indemnification for liabilities arising from "the sole negligence of the promisor." N.C. Gen. Stat. § 22B-1(a). Put simply, a construction contract "generally may not include a provision whereby a party is indemnified for its own negligence." One Beacon, 207 N.C. App. at 488; 700 S.E.2d at 124 (quotation omitted); see Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co. of N.C., 144 N.C. App. 503, 506, 548 S.E.2d 807, 810 (2001), aff'd, 355 N.C. 274, 559 S.E.2d 786 (2002) (per curiam); Int'l Paper Co. v. Corporex Constructors, Inc., 96 N.C. App. 312, 315, 385 S.E.2d 553, 555 (1989). The parties agree that their contract is a construction contract.

The parties' indemnity provision is unambiguous and is not void against public policy.[4] Under the provision, Thomas Industrial must indemnify International Paper "for any and all damage or injury of any kind or nature" that is "caused by, arises out of, on account of, or as a result of" Thomas Industrial's performance under the contract. [D.E. 37-1] 5. Under its plain language, the indemnification clause applies to liabilities caused by or arising from Thomas Industrial's performance under the contract. Stated differently, the clause does not indemnify International Paper "for its own negligence," but for Thomas Industrial's negligence. One Beacon, 207 N.C. App. at 488; 700 S.E.2d at 124 (quotation omitted); see City of Wilmington, 117 N.C. App. at 248, 450

---

[4] Because the indemnity provision is not void against North Carolina public policy, the court need not resolve whether the contract's waiver is enforceable.

13

S.E.2d at 576 ("Mere general, broad, and seemingly all-inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence." (quotation omitted)).[5] Similarly, the clause requiring compliance with OSHA safety standards and regulations limits any indemnification to liabilities arising from Thomas Industrial's failure to comply with the relevant OSHA requirements. See [D.E. 37-1] 5.

International Paper does not plausibly allege that Thomas Industrial acted negligently. Rather, International Paper alleges that Thomas Industrial "was negligent or in some other actionable manner legally responsible, for the events and happenings referred to, and for proximately causing the injuries and damages incurred by Plaintiff, if any, as alleged in [Taveney's] Complaint." Third-Party Compl. ¶ 3. International Paper does not allege any facts to support its conclusion that Thomas Industrial acted negligently. Thus, International Paper's allegations in its third-party complaint are vague, threadbare allegations devoid of any factual matter that plausibly alleges either that Thomas Industrial performed negligently or that Thomas Industrial failed to follow OSHA safety standards

---

[5] Thomas Industrial cites Jackson v. Associated Scaffolders and Equipment Co., 152 N.C. App. 687, 568 S.E.2d 666 (2002), and Miller Brewing Co. v. Morgan Mechanical Contractors, Inc., 90 N.C. App. 310, 368 S.E.2d 438 (1988), as examples where the North Carolina Court of Appeals construed broad language in indemnity clauses as impermissibly encompassing the negligence of the promisee. See [D.E. 37] 18–20. Jackson and Miller are distinguishable because the indemnity clauses in those cases did not specify whose conduct triggered the provision. See Jackson, 152 N.C. App. at 690, 568 S.E.2d at 668 (stating the lessee must indemnify lessor "for loss, damage or personal injury which results from non-compliance with any portion of this Paragraph, or from non-compliance with any law, regulation, or other safety order"); Miller, 90 N.C. App. at 313, 368 S.E.2d at 439 (stating the seller must indemnify for liability "arising out of or in any way connected with the work done or goods furnished under this P.O."). Here, the provision specifically states the injury or harm must arise from or be caused by Thomas Industrial's performance. It is not so broad as to require indemnification for liability that is "in any way connected to" the contract. Miller, 90 N.C. App. at 313, 368 S.E.2d at 439.

14

and regulations. See, e.g., Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63.[6] Moreover, even though the third-party complaint references Taveney's original complaint, Taveney's original complaint only contains facts alleging International Paper, not Thomas Industrial, was negligent. See Compl. ¶¶ 8–36. Accordingly, International Paper fails to plausibly allege an express indemnity claim, and the court dismisses the claim.

B.

International Paper also seeks indemnification based on a theory of implied equitable indemnity. Third-Party Compl. ¶¶ 12–16. A claim for implied equitable indemnity "aris[es] from the tort theory of indemnity, often referred to as a contract implied-in-law." Woody v. FlightGest, Inc., 265 N.C. App. 602, 827 S.E.2d 346, 2019 WL 2189279, at *2 (2019) (unpublished table decision) (quotation omitted); see Willoughby v. Johnston Mem'l Hosp. Auth., 248 N.C. App. 837, 791 S.E.2d 283, 2016 WL 4091370, at *11 (2016) (unpublished table decision); Kaleel Builders, Inc. v. Ashby, 161 N.C. App. 34, 38, 587 S.E.2d 470, 474 (2003); McDonald v. Scarboro, 91 N.C. App. 13, 22, 370 S.E.2d 680, 686 (1988).

Thomas Industrial argues that the Workers' Compensation Act, N.C. Gen. Stat. §§ 97-1, et seq., bars International Paper's implied indemnity claim. See [D.E. 37] 11–15. International Paper responds that Thomas Industrial expressly waived that argument in the parties' contract. See [D.E. 39] 5–9. Again, the court need not resolve whether the waiver is enforceable, because even if it is

---

[6] International Paper alleges numerous facts in its memorandum opposing Thomas Industrial's motion to dismiss. See [D.E. 39] 2–4. However, under Iqbal, Twombly, and their progeny, the allegations in the complaint are the relevant facts, not later factual assertions in a party's briefing. See, e.g., Odjaghian v. HHS Tech. Grp., LLC, 848 F. App'x 534, 541 (4th Cir. 2021) (unpublished); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011).

15

enforceable, International Paper fails to state a claim for at least two reasons.

First, "[i]f there is an express contract of indemnity, the indemnitee is relegated to his contract...." Greene v. Charlotte Chem. Labs., Inc., 254 N.C. 680, 691, 120 S.E.2d 82, 89 (1961); see Willoughby, 2016 WL 4091370, at *11 ("[T]here can be no implied contract where there is an express contract between the parties in reference to the same subject matter." (cleaned up)); Charlotte Motor Speedway v. Tindall Corp., 195 N.C. App. 296, 302–03, 672 S.E.2d 691, 695 (2009). As stated, the parties have an express indemnity provision in their contract, and that provision is not void against North Carolina public policy. Thus, as a matter of law, International Paper cannot state an implied indemnity claim.

Second, "to successfully assert a right to indemnity based on a contract implied-in-law, a party must be able to prove each of the elements of an underlying tort such as negligence." Schenkel & Shultz, Inc., 180 N.C. App. at 268, 636 S.E.2d at 843; see Woody, 2019 WL 2189279, at *2; Willoughby, 2016 WL 4091370, at *11, Kaleel Builders, Inc., 161 N.C. App. at 39, 587 S.E.2d at 474; see also Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 563–64, 75 S.E.2d 768, 771 (1953) (explaining that implied indemnity arises from an underlying tort). As discussed, International Paper fails to allege any factual matter to support its threadbare assertion that Thomas Industrial acted negligently. See Third-Party Compl. ¶ 3. Thus, International Paper has not plausibly alleged the elements of an underlying tort, which is necessary to state an implied indemnity claim. Accordingly, International Paper's implied indemnity claim fails, and the court dismisses the claim.

C.

International Paper alleges a claim for apportionment of fault, which the court construes as a contribution claim. See Third-Party Compl. ¶¶ 17–19; [D.E. 39] 1 (stating "IP [is] ... asserting indemnity, contribution, and declaratory judgment claims"). As with the implied indemnity claim,

16

the parties dispute whether Thomas Industrial waived the application of the Workers' Compensation Act in the contract. Again, the court need not resolve this dispute, because International Paper fails to state a claim regardless of whether the waiver applies.

If the waiver is unenforceable, then the Workers' Compensation Act applies to International Paper's contribution claim. The Act states: "If the verdict shall be that <u>actionable negligence of the employer did join and concur with that of the third party</u> in producing the injury or death, then the court shall reduce the damages award by the jury against the third party by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation . . . and the third party shall have no further right by way of contribution or otherwise against the employer," except as provided by an express indemnity contract. N.C. Gen. Stat. § 97-10.2(e) (emphasis added). If the contractual waiver is enforceable, International Paper's right to contribution is governed by N.C. Gen. Stat. § 1B-1, which states that, subject to exceptions in the statute, "where two or more persons <u>become jointly or severally liable in tort</u> for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." N.C. Gen. Stat. § 1B-1(a) (emphasis added).

Under either statute, <u>both</u> parties must be at fault for a right of contribution to accrue. "Without a tort, there can be no tort-feasor; and without a tort-feasor, there can be no right to contribution . . . ." Kaleel Builders, Inc., 161 N.C. App. at 43, 587 S.E.2d at 477; see Pearsall v. Duke Power Co., 258 N.C. 639, 642, 129 S.E.2d 217, 219 (1963) ("Of course there can be no contribution unless the parties are joint tortfeasors."); Woody, 2019 WL 2189279, at *2; Iowa Nat'l Mut. Ins. Co. v. Surratt, 19 N.C. App. 745, 746, 200 S.E.2d 220, 221 (1973) ("A basic prerequisite to plaintiff's right of contribution is that there be joint tort liability."). As stated, International Paper does not plausibly allege any facts indicating Thomas Industrial acted negligently and was a

17

contributing cause of Taveney's injuries. See Third-Party Compl. ¶ 3. Thus, International Paper fails to state a claim for contribution, and the court dismisses the claim. See Kaleel Builders, Inc., 161 N.C. App. at 43, 587 S.E.2d at 476 ("Because plaintiff has alleged no cause of action in tort, plaintiff's contribution theory of recovery fails as a matter of law.").

D.

Finally, International Paper seeks a declaratory judgment declaring the rights and obligations between it and Thomas Industrial concerning indemnity and contribution. See Third-Party Compl. ¶¶ 20–23. International Paper does not state in its third-party complaint whether it seeks a declaratory judgment under federal or state law. The court applies federal law because "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction." White v. Nat'l Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990) (quotation omitted); see Wilkerson Francis Invs., LLC v. Am. Zurich Ins. Co., No. 3:19cv582, 2020 WL 4238429, at *4 (E.D. Va. July 23, 2020) (unpublished).

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," so long as the case is a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is purely remedial and does not create jurisdiction or create substantive rights. See CGM, LLC v. BellSouth Telecomm., Inc., 664 F.3d 46, 55–56 (4th Cir. 2011); Lotz Realty Co., Inc. v. HUD, 717 F.2d 929, 932 (4th Cir. 1983); see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950). Thus, "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." CGM, 664 F.3d at 55–56 (alteration in original) (quotation omitted); see Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth., 108 F.3d 658, 668 (6th Cir. 1997).

18

As explained, the court has dismissed International Paper's substantive claims. Thus, the Declaratory Judgment Act can provide no relief to International Paper, and the court dismisses International Paper's declaratory judgment claim.

IV.

In sum, the court DENIES third-party plaintiff's motion for leave to amend [D.E. 41], GRANTS third-party defendant's motion to dismiss [D.E. 36], and DISMISSES third-party plaintiff's complaint [D.E. 11]. Not later than April 8, 2022, Taveney and International Paper SHALL update the court on the status of the settlement between Taveney and International Paper, including whether there will be a stipulation of dismissal.

SO ORDERED. This 28 day of March, 2022.

JAMES C. DEVER III
United States District Judge